# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW P. DEC,                          )
                                         )
                        Plaintiff,       )        Civil Action No. 2:12-cv-565
            v.                           )
                                         )        Judge Mark R. Hornak
PENNSYLVANIA STATE POLICE,               )
TROOP D, et al.                          )
                                         )
                        Defendants.      )
                                         )

## OPINION

**Mark R. Hornak, United States District Judge**

This is a § 1983 case involving a series of events between 2008 to 2010, in which *pro se*
Plaintiff Matthew Dec alleges that various officials and legal officers of Butler County and the
Commonwealth of Pennsylvania violated his Federal constitutional rights and committed state
law torts. Pending before the Court are two motions to dismiss, the first filed by Defendants
Butler County, Butler County Sheriff Michael Slupe, Butler County Public Defender's Office,
Butler County District Attorney's Office, Butler County Public Defender Charles Nedz, and
Butler County "Assistant District Attorney Bosco"[1] (collectively, "Butler County Defendants"),
ECF No. 4; and the second filed by Defendants Pennsylvania State Police Troop D, "Trooper
Jenkins," "Trooper Mifsob," "Trooper Driscoll," and "Trooper Berger" (collectively,
"Commonwealth Defendants"), ECF No. 7. Defendants seek to have all claims dismissed except

---

[1] Neither Plaintiff nor Defendants have identified ADA Bosco by first and last name, nor have they done so for the
Defendant State Troopers. However, based on the filings before the Court, there is no reason to doubt that the
individuals named in quotation marks are actual natural persons. Additionally, ADA Bosco and Mr. Nedz were not
named as Defendants in the Complaint, and thus were not parties to the case at the time of the filing of the Butler
County Defendants' Motion to Dismiss. However, anticipating (correctly) that Mr. Dec would seek to amend his
Complaint to include those two individuals, Defendants also addressed the potential claims Mr. Dec might have
against them in the same Motion, and they are therefore addressed in this opinion. *See* ECF No. 5 at 9, 12; ECF No.
9 at 9-10.

a single § 1983 count predicated on the use of excessive force in violation of the Fourth Amendment allegedly committed by Trooper Berger. Having considered the *pro se* Plaintiff's Complaint, ECF No. 1; the Defendants' Motions to Dismiss, ECF Nos. 4, 7, and respective Briefs in Support, ECF Nos. 6, 8; and Plaintiff's Response, ECF No. 9, the County Defendants' Motion is granted, and the Commonwealth Defendants' Motion is granted in part.

## I. BACKGROUND AND FACTS

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the factual allegations in the Complaint and draw all reasonable inferences in the Plaintiff's favor. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). In his Response, Mr. Dec has alleged a small number of novel facts, and has purported to amend his complaint to include charges against ADA Bosco and Mr. Nedz.

Ordinarily, a plaintiff is not permitted to rely on new facts alleged in response to a motion to dismiss in order to defeat the motion. *See Flaig v. Aladdin Food Mgmt. Services, LLC*, CIV. A. NO. 2:12-CV-00839, 2012 WL 5288716, at *4 n.1 (W.D. Pa. Oct. 23, 2012). However, mindful that the Court has the "obligation to liberally construe a *pro se* litigant's pleadings," *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), which are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and because the Court's consideration of a small number of alleged facts falling outside the Complaint does not alter its disposition in any way that is prejudicial to any Defendant, it will consider those novel facts as if properly pled in the Complaint.

Similarly, a plaintiff is not ordinarily permitted to amend his pleadings to assert claims against a new party by way of a response to a Motion. However, out of the same solicitousness for liberally construing a *pro se* plaintiff's pleadings, given that the County Defendants did take

2

the opportunity in their Motion to Dismiss to address potential claims against ADA Bosco and Mr. Nedz, and out of the well-founded assumption that the Complaint might be construed to include them as defendants, the Court will consider Mr. Nedz and ADA Bosco to be parties to this case for purposes of resolving the pending Motions.

Even considering Plaintiff's Response, however, many of the facts that form the basis of his allegations are difficult to discern, being presented in an often incoherent manner. As best the Court can tell, for the purposes of the disposition of Defendant's Motion, the essential facts, based on the facts alleged in the Complaint, and viewed in the light most favorable to the Plaintiff, are as follows.

### A. 2008 Events

Sometime in August 2008, Mr. Dec became embroiled in a dispute with the landlord or property manager of his wife's apartment (it is difficult to tell which), Jill Double, which ultimately resulted in Ms. Double summoning the police to have Mr. Dec removed from the premises when he refused to leave voluntarily. *See* Compl. at 5 ¶¶ 7-19.[2] Trooper Jenkins arrived on the scene, and although he initially "informed Plaintiff that he was not going to charge him" for criminal trespass, Trooper Jenkins later charged him when he "was ordered by said [property] manager" to do so. *Id.* at 6 ¶¶ 20-21; *see also* Butler Cty. Comm. Pls. Ct., Dkt. Nos. CP–10–MD–0000039–2009, CP–10–MD–0000404–2009 (Mr. Dec charged with "Criminal Trespass" for events transpiring in August 2008).[3] A hearing was conducted on the criminal trespass

---

[2] Because several paragraphs throughout the Complaint repeat numbers, and some are without numbers at all, this Opinion will reference paragraphs in the Complaint by both their page number and paragraph number, if provided.

[3] The Court takes judicial notice of these state court dockets. *See Dec v. Double*, CIV. A. 10-301, 2010 WL 2471678, at *2 n.1 (W.D. Pa. June 15, 2010); *Kalomiris v. Monroe County Syndicate,* CIV. A. 1:08-0539, 2009 WL 73785, at *2 n. 8 (M.D. Pa. Jan. 8, 2009). A state court docket is a "public record" that the Court may consider at the motion to dismiss stage. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

charges before District Magistrate Judge Louis Stoughton, at which Plaintiff "raised grievance after hearing [the] Magistrate conspiring with State Troopers ex parte to find him guilty before trial began." Compl. at 6 ¶¶ 23-24.

Sometime thereafter, Plaintiff instituted civil proceedings against Ms. Double and the property management company. *Id.* at ¶ 31. A hearing in that case was held on February 4, 2010 before District Magistrate Judge Sue Haggerty. There, Judge Haggerty allegedly violated Mr. Dec's rights when she initially stated that she "lacked jurisdiction" to hear the case, but later "behind closed doors . . . 'dismissed [the case] with prejudice' . . . thereby tampering with public records." *Id.* Sheriff Slupe was allegedly a "witness" of this action, *id.*, and "privy to the 'cover up,'" as to which trooper Driscoll at some point "under oath testified." Resp. ¶¶ 6A-B, ECF No. 9.

Although he does not reference it in his Complaint, Plaintiff filed suit in this Court on March 5, 2010 against Ms. Double, T&R Properties, Pennsylvania State Police, District Magistrate Haggerty, District Magistrate William Shaffer, District Magistrate Thomas Doerr, the "U.S. Attorney's Office," and the Federal Bureau of Investigation, alleging that private and state actors violated his constitutional rights in the events surrounding the same grievances as above. *See Dec v. Double*, CIV. A. 10-301, 2010 WL 2471678 (W.D. Pa. June 15, 2010) (Ambrose, J.). That lawsuit was dismissed under Fed. R. Civ. P. 41(b) for failure to prosecute. *See id.*[4]

## B. 2010 Events

On May 13, 2010, while that prior case was ongoing, Mr. Dec called the state police to "press charges against District Magistrate Sue Haggerty." Compl. at 13 ¶ 1; *compare id. with*

---

[4] The Court takes judicial notice of Judge Ambrose's opinion and of the *Dec v. Double* docket. On a motion to dismiss, a Court "may take notice of another court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion. . ." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The portion of Mr. Dec's Complaint that describes the 2008 events and counts is largely identical to his Complaint in that case. *See* Dkt. No. 10-cv-301, ECF No. 2.

2010 WL 2471678, at *1 (internal marks omitted). Mr. Dec was criminally charged with "Terroristic Threats" and "Harassment" in "retaliation" for that phone call and was arrested by "State Police." Compl. at 13 ¶ 3. In *Dec v. Double*, Mr. Dec filed briefing alleging that part of the reason for which he was unable to timely file his requisite briefing was his arrest and detention for these charges. *See* 2010 WL 2471678, at *1.

Sometime after Mr. Dec was taken to the police station, "State Police" chained him to a metal bench. When Mr. Dec protested and asked, "'All this because you refuse to file charges with Haggerty for tampering with public records, what happened to your oath of office to provide equal protection under the law?', Trooper Berger approached Plaintiff, took out his pepper spray, emptied it in Plaintiff's eyes, and said, 'Here's your equal f**king protection under the law asshole!" Compl. at 13 ¶ 5. Mr. Dec's eyes were flushed by a prison nurse and he was placed in solitary confinement for three days. *Id.* ¶ 7. Later, in jail, another inmate allegedly told Mr. Dec that he had heard the "same State cops . . . laughing about you trying to charge [District Magistrate Haggerty] and said they would do nothing." *Id.* ¶ 8.

At some point in the proceedings surrounding this charge, Mr. Dec became acquainted with his Public Defender, Charles Nedz, and ADA Bosco. Mr. Nedz allegedly "buried" the story Mr. Dec had heard from the inmates about the police talking and laughing about him, *id.*, and "engaged in a pattern of conspiracy with" ADA Bosco and Sheriff Slupe in "covering up" the injustices Mr. Dec suffered. Resp. ¶ 8C. Also, ADA Bosco, when told by Mr. Dec that he wanted a jury trial for his charges, reduced them to summary offenses in order to deprive him of a jury trial. *Id.* ¶ 11. Mr. Dec allegedly suffered other wrongs surrounding ensuing proceedings, but none of them relate to any Defendants here named.

Mr. Dec filed suit in the Court of Common Pleas of Butler County on March 19, 2012 against the above-named Defendants, who timely removed to this Court. 28 U.S.C. § 1441(a). Mr. Dec uses 42 U.S.C. § 1983 to bring this suit against Defendants in their official and individual capacities, alleging that they violated his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights, and under various state tort causes of action, and seeking $2.5 million in damages. Compl. at 1-2.[5] He does not specify against whom each of his claims is lodged.

## II. LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet that standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). The Third Circuit has laid out a three step process for the Rule 12(b)(6) analysis:

> First, the Court must "take[] note of the elements a plaintiff must plead to state a claim." Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a Court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

---

[5] The Complaint lists 22 counts of "violations" committed by Defendants. Compl. at 3. Counts 1-6 name amendments to the federal Constitution. Count 13 names § 1983. Counts 14-22 name state law torts. *Id.* Counts 7-8 cite to the Fair Housing Act and the Landlord-Tenant Act of 1951, statutes that have no bearing on the facts presented to this Court, as related to defendants to this suit. *See infra* section III.A.1. Counts 9-12 cite to federal criminal statutes that are wholly inapplicable to this civil suit. Even viewed in the light most generous to Plaintiff, Counts 7-12 are pure legal conclusions that are not grounding in fact related to any of the Defendants here, and thus do not survive the *Twombly/ Iqbal* standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (collectively known as "*Twiqbal*," *see RHJ Med. Ctr., Inc. v. City of DuBois*, 754 F. Supp. 2d 723, 730-31 (W.D. Pa. 2010)); *see also* Part II *infra*.

*Malleus*, 641 F.3d at 563 (quoting *Iqbal*, 556 U.S. at 675, 679) (internal citations omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claim(s) presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *See Iqbal*, 556 U.S. at 679. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

## III.   DISCUSSION

Section 1983 provides a vehicle to assert claims for violation of an individual's federal constitutional rights. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). When analyzing a § 1983 claim, the court's initial inquiry must focus on two essential elements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *see also Harvey v. Plains Twp. Police Dep't.*, 421 F.3d 185, 189 (3d Cir. 2005). With regards to the first prong, it is essential that the Plaintiff establish that the conduct complained of was committed by a "person" for purposes of § 1983. *See Parratt*, 451 U.S. at 535.

### A. Commonwealth Defendants - § 1983 Claims

#### 1. 2008 Events

Mr. Dec describes a number of events that occurred in 2008, and as best can be discerned, bases at least part of the allegations in his Complaint on them. The only defendant who is named in the 2008 sequence of events is Trooper Jenkins, whose only alleged act is that he charged Mr. Dec with criminal trespass when "ordered by [the property] manager." Compl. at 6 ¶¶ 20-21. Read in the light most favorable to Plaintiff, Trooper Jenkins also is one of the state

7

police officers who conspired to find Mr. Dec guilty before his criminal trespass trial began. *See id.* ¶ 24. These events would have occurred sometime before September 10, 2008, the date of the criminal hearing. *See id.* at ¶ 23. Even if these allegations could state a cause of action for which relief could be granted, any such action is facially barred by the statute of limitations.

Normally, the appropriate avenue for a defendant to bring a statute of limitations defense is the Answer, as contemplated in Fed. R. Civ. P. 8(c). *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). However, under the so-called "Third Circuit Rule," a limitations defense may be raised by a motion pursuant to Rule 12(b)(6), if "the time alleged in the statement shows that the cause of action has not been brought within the statute of limitations." *Id.* (internal citation omitted). The untimeliness must be "apparent on the face of the complaint." *Id.* (internal citation omitted).

It is well established that a state's statute of limitations for personal injury actions applies to all actions brought under 42 U.S.C. § 1983, though its accrual time may vary based on the type of injury alleged. *See Wallace v. Kato*, 549 U.S. 384, 387-88 (2007); *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). In Pennsylvania, the statute of limitations for personal injury action, and thus a § 1983 claim, is two years. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); 42 Pa. Cons. Stat. Ann. § 5524 (West 2012). For a § 1983 claim seeking damages for a false arrest and false imprisonment in violation of the Fourth Amendment, the statute of limitations begins to run "at the time the claimant becomes detained pursuant to the legal process." *Wallace*, 549 U.S. at 397. Mr. Dec alleges that there was a hearing before Judge Stoughton on September 10, 2008, at which time he would have been detained pursuant to legal process, marking the accrual trigger for the statute of limitations. *See id.*

For a claim seeking damages for malicious prosecution, for which one of the elements is the resolution of the underlying criminal proceedings in the Plaintiff's favor, the statute of limitations begins to run from the date of the favorable termination of the proceedings. *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989). Mr. Dec's bare-bones complaint does not specifically allege that the criminal proceedings were resolved in his favor at all. But even if they were resolved in his favor, however, a review of the Butler County Court of Common Pleas dockets for cases CP-10-MD-0000039-2009 and CP-10-MD-0000404-2009, reveals that the cases were marked "Closed" on December 11, 2009 and January 15, 2009, respectively. Mr. Dec did not file the instant suit until March 19, 2012, outside the two-year window for any of his potential claims against Trooper Jenkins. Thus, his claims against Trooper Jenkins are time-barred, and are dismissed with prejudice.[6]

### 2. *Pennsylvania State Police, Troop D; Police Officers in their Official Capacity*

Plaintiff's claims against the Pennsylvania State Police, Troop D are barred because it is not a proper "person" under § 1983, and it is immune from suit under the Eleventh Amendment. It is well established that states and state agencies are not "persons" for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70, 71 (1989). This includes a State Police Department. *Id.* For the same reason, a suit against a police officer in his official capacity is "no different from a suit against the State itself," and is also prohibited. *Id.* at 71. Thus, all federal claims against the Pennsylvania State Police, Troop D and the State Troopers in their official capacities are dismissed.

---

[6] The same reasoning applies to any claims Mr. Dec might have against any other individuals resulting from the 2008 events, though none can be discerned other than the Pennsylvania State Police, Troop D, who are already immune from suit under the Eleventh Amendment, *see infra*, and against whom suit would already be barred under the doctrine of res judicata based on the dismissal of Mr. Dec's suit against the Pennsylvania State Police in *Dec v. Double*, 2010 WL 2471678.

### 3. Police Officers in their Individual Capacity

Even when sued in his individual capacity, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt*, 451 U.S. at 537 n.3). Here, Plaintiff names as defendants Troopers Jenkins, Mifsob, Driscoll, and Berger. As noted above, the only reference to Trooper Jenkins is with regards to events that occurred outside the statute of limitations. The Court cannot find reference to Trooper Mifsob anywhere in Plaintiff's Complaint or Response, and therefore Plaintiff has failed to state a claim against him.

The only mention of Trooper Driscoll is in Plaintiff's Response: "Trooper Driscoll under oath testified that Sheriff Mike Slupe was privy to the 'cover up' at trial." Resp. ¶ 6(B). Because all Mr. Dec alleges regarding Trooper Driscoll is that he testified that *another* person was part of a "cover up," he has not sufficiently alleged the personal involvement of Trooper Driscoll in any of the alleged wrongs under § 1983 and the standards of *Twiqbal*. Moreover, trial witnesses enjoy absolute immunity from suit, including a § 1983 suit, with respect to any claim based on their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 332-333 (1983). This applies to testimony at trial, *id.*, at pre-trial proceedings, including depositions, *Williams v. Hepting*, 844 F.2d 138, 142 (3d Cir. 1988), and before a grand jury, *Rehberg v. Paulk*, 132 S. Ct. 1497, 1510 (2012). Therefore, at whatever stage and before whatever tribunal Trooper Driscoll "under oath testified," he is immune from liability allegedly flowing from such testimony. Thus, the federal claims against Troopers Mifsob and Driscoll are dismissed with prejudice.

This leaves a remaining potential claim against Trooper Berger in his individual capacity. When Mr. Dec was brought in to the police station on charges of harassment and terroristic

10

threats in May 2010, he alleges that he was chained to a metal bench, where he was pepper sprayed by Trooper Berger who stated, "Here's your equal f\*\*king protection, asshole!" Compl. at 13-14 ¶ 5. This happened before Mr. Dec's bail was set, and thus assumedly before his initial appearance. *Id.* ¶ 6. The Commonwealth Defendants in their Motion to Dismiss ask that the Court dismiss all claims except "the 2010 4th Amendment excessive force claim lodged against Trooper Berger." Proposed Order, ECF No. 7 Ex. 1.[7]

However, Mr. Dec's Complaint does not contain a specific "Fourth Amendment excessive force claim," but rather broadly alleges violations of his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights. While the Commonwealth Defendants' motion correctly argued that Mr. Dec's Fifth Amendment count cannot stand because the Fifth Amendment's due process clause applies only to the actions of the *federal* government, *see B & G Constr. Co. v. Dir., Office of Workers' Comp. Programs,* 662 F.3d 233, 246 n.14 (3d Cir. 2011), it failed to address the applicability of any of the other Amendments. Because the Ninth Amendment, standing alone, does not confer any substantive rights that can form the basis of a constitutional claim in a § 1983 suit, *Nicolette v. Caruso,* 315 F. Supp. 2d 710, 718 (W.D. Pa. 2003), that count also cannot stand.[8] This leaves Mr. Dec's First, Fourth, Eighth, and Fourteenth Amendment claims.

### a. Fourth and Eighth Amendments

The Fourth Amendment's protection against unreasonable searches and seizures protects individuals from the use of excessive force by law enforcement officials in the course of arrest,

---

[7] Defendants did not, for example, argue that Trooper Berger's actions did not constitute a violation of a constitutional right, or were protected under the doctrine of qualified immunity, *see Wilson v. Layne,* 526 U.S. 603, 609 (1999), and thus the Court does not address such defenses here.

[8] The Ninth Amendment reads: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.

investigatory stop, or other "seizure" of the person. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Neither the Supreme Court nor the Third Circuit has definitively stated at what point the protections of the Fourth Amendment cease. *See id.* at 395 n.10; *Schneyder v. Smith*, 653 F.3d 313, 321-22 (3d Cir. 2011) (citing *Gallo v. City of Phila.*, 161 F.3d 217, 222-24 (3d Cir. 1998)).

However, our Court of Appeals has affirmed that it views the proper test for the duration of that protection to be the "continuing seizure" interpretation of Justice Ginsburg's concurrence in *Albright v. Oliver*, 510 U.S. 266, 277-80 (1994) (Ginsburg, J., concurring). *See Schneyder*, 653 F.3d at 221-22. Under that test, a Fourth Amendment seizure occurs "[w]hen a state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding," *id.*, which lasts at least until "commitment has been ordered," *id.* at 322 n.9. Mr. Dec's allegations of being chained to a bench and pepper sprayed in the eyes before his bail was set thus states a claim for the use of excessive force by a law enforcement official in violation of the Fourth Amendment.[9] Therefore, the Court agrees with the Commonwealth Defendants that such a claim should not be dismissed.

Additionally, the Eighth Amendment's protections against cruel and unusual punishment do not attach until an individual has been both convicted and sentenced for his crimes, *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Graham*, 490 U.S. at 392 n.6)), and therefore are inapplicable here. Mr. Dec's Eight Amendment claim is dismissed with prejudice.

b. Fourteenth Amendment

The Supreme Court has consistently held that a "pretrial detainee" enjoys the protections of the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("a detainee may not be punished prior to an adjudication of guilt in accordance with due

---

[9] Whether the Fourth Amendment's protections continue after bail has been set, the Court need not here decide. *See* n.10 *infra*.

process of law."). This includes protecting "a pretrial detainee from the use of excessive force that amounts to punishment," *Graham*, 490 U.S. at 395 n.10, as well as from "conditions and restrictions of pretrial detainment" that amount to punishment, *Bell*, 441 U.S. at 533. *See also Fuentes v. Wagner*, 206 F.3d 335 (3d Cir. 2000) (discussing various constitutional protections for treatment of pretrial detainee). It is entirely possible from the facts alleged that Mr. Dec could have been considered a "pretrial detainee" at the time in which he was allegedly chained to the bench and pepper sprayed, and the incident may well have occurred at that elusive "point at which arrest ends and pretrial detention begins." *Graham*, 490 U.S. at 395 n.10.

While over time, the courts have appeared to waver as to whether certain of the above-mentioned Fourth and Fourteenth Amendment rights necessarily exclude each other, and as to the precise time at which each right attaches and detaches,[10] this Court need not resolve such questions at this juncture. It is sufficient that Mr. Dec has alleged a violation of his Fourteenth Amendment Due Process rights, by being chained to a bench and being pepper sprayed in the eyes for no alleged reason other than spite while in police custody. Therefore, Mr. Dec may proceed with his § 1983 claims alleging that the pepper spraying incident constituted a violation of his Fourth Amendment right, made applicable to the states by the Fourteenth Amendment, as well as a violation of his rights under the Due Process Clause of the Fourteenth Amendment.

---

[10] *Compare Schneyder*, 653 F.3d at 320 ("A government-imposed restriction on a person's liberty is a seizure governed by the Fourth Amendment if its purpose is to ensure that he appears in court. *In contrast*, if a pre-trial detainee suffers a deprivation amounting to punishment, his claim is governed by the Due Process Clause") (emphasis added) *with Albright*, 510 U.S. at 280 (Ginsburg, J., concurring) (defendant "remained effectively 'seized' for trial so long as the prosecution against him remained pending"); *see also Bistrian*, 696 F.3d at 374 (holding that the *Bell* test for punishment of a pretrial detainee does not "apply to the use of excessive force against a pretrial detainee in the context of a prison disturbance," but instead the standards of the Eight Amendment as promulgated in *Whitley v. Abers*, 475 U.S. 312 (1986)) (emphasis omitted). Especially given this complex state of the law, the lack of briefing from either side on the matter, the lack of developed record evidence as to the timing of the events, and the reality that all the claims discussed in this section arise from the same single factual event and thus the resolution of any one of them will not alter the trajectory of the litigation at this time, the Court finds it unnecessary to opine at this juncture as to whether Mr. Dec's claims can fall under only one of the legal rubrics of procedural due process, substantive due process, or any other right embodied in the Fourteenth Amendment, or the Fourth Amendment.

## c. First Amendment Retaliation

Mr. Dec also asserts a violation of his First Amendment rights and "retaliation," Compl. at 3, assumably because of the alleged fact that when he called the police station to seek the filing of charges against Judge Haggerty, he was arrested under the "false charges" of "Terroristic Threats" and "Harassment," *id.* at 13 ¶¶ 1-3; and suffered the pepper spraying incident. He also describes that he was pepper sprayed after asking, "All this because you refuse to file charges with Haggerty for tampering with public records, what happened to your oath of office to provide equal protection under the law?", with Trooper Berger responding, "Here's your equal f**king protection under the law asshole!" Compl. at 13-14 ¶5.

In order to state a § 1983 claim for First Amendment retaliation, a plaintiff must allege "(1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In establishing causation, the plaintiff must allege that the retaliatory action would not have been taken but for the plaintiff's protected speech. *Hartman v. Moore*, 547 U.S. 250, 260 (2006). An arrest and prosecution can constitute an adverse action, *City of Houston v. Hill*, 482 U.S. 451, 461–63 (1987), as can other less formal adverse actions taken by police, if they would deter a person of ordinary firmness from exercising his or her rights, *see Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (allegation of "campaign of harassment and intimidation"); *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010) (police use of less-than-lethal weapons to disperse peaceful crowd). "The effect of the alleged conduct on the [plaintiff's] freedom of speech need not be great in

order to be actionable, but it must be more than *de minimis.*" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal citation omitted).

Here, Mr. Dec alleges two possible instances of speech which, viewed in the light most favorable to him, could have been the "but for" cause for the pepper spraying incident: (1) his statements on the phone for which he was arrested; and (2) his statements made to Trooper Berger immediately before the pepper spraying. It is plausible that Trooper Berger's mistreatment of Mr. Dec could have been in retaliation for the statements that Mr. Dec made on the phone and for which he was arrested. The temporal proximity before those events is still certainly close enough for a causal link to exist. *See Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003). It is also plausible that Trooper Berger acted in retaliation for Mr. Dec's verbal protestations, which might be supported by the allegation that Trooper Berger used many of Mr. Dec's non-profane words back at him while in the act of pepper spraying him. Chaining a person to a bench and pepper spraying him is plainly beyond *de minimis* harm, and especially given the extreme pain likely caused by the pepper spray, the Court has no difficulty in concluding that its use would deter a person of ordinary firmness from speaking. Finally, at least on the facts as alleged, Mr. Dec engaged in protected speech, namely, (1) criticism of Judge Haggerty, and (2) his protests to his mistreatment by the police itself. *See Arnett v. Myers,* 281 F.3d 552, 560 (6th Cir. 2002) ("It is well-settled that the freedom to criticize public officials and expose their wrongdoing is a fundamental First Amendment value . . . ").[11] Therefore, Mr. Dec

---

[11] The Court does note that in *Dec v. Double*, Mr. Dec provided to the Court a statement in which he detailed his statements to the police in a way that he did not in his Complaint, namely that he "having [drunk] half a case of beer" told the police that "what you worthless idiots need to do is go parade about outside until someone takes a high powered rifle and shoots your worthless commie asses." 2010 WL 2471678, at *1. While those vulgar and threatening statements may well be central to this litigation at a later stage, because they are not part of the record before the Court at the motion to dismiss stage, they do not alter the Court's determination on this point at this stage of the proceedings.

is able to state a claim that his treatment by Officer Berger constituted retaliation in violation of his First Amendment rights.[12]

### B. Butler County Defendants - § 1983 Claims

#### *1. Butler County Sheriff Slupe*

Mr. Dec does not sufficiently allege any wrong personally committed by Sheriff Slupe for which relief can be granted. The only mention of Sheriff Slupe in the Complaint and Response is the following: (1) that he was a "witness" to the civil proceeding before District Magistrate Judge Haggerty on February 4, 2010, in which the Judge allegedly wrongly "dismissed with prejudice" Mr. Dec's civil case against Manager Double and T&R Properties, and in which the Judge "tamper[ed] with public records," Compl. at 6 ¶ 31, (2) that he was "privy to the 'cover up' at [the February 4] trial; by doing nothing," as testified by Trooper Driscoll, Resp. ¶ 6A, and (3) that he "engage[d] in a pattern of conspiracy with Nedz and [ADA Bosco] to cover up said falsifications, Constitutional violations, and criminal violations," *id.* at ¶ 8C.

It is difficult to discern what factual historical events Mr. Dec is actually talking about, let alone how a § 1983 claim could be crafted out of them. It appears that, at worst, Sheriff Slupe witnessed an event that Mr. Dec perceived to be an injustice, and then helped or conspired with others in some fashion to "cover [it] up," by failing to act in some way that Mr. Dec believes he should have. But Mr. Dec has not described in a non-conclusory fashion how any action taken by Sheriff Slupe deprived him of any federal statutory or constitutional right for which he has a

---

[12] Mr. Dec does not name any officer who was either on the phone with him, or arrested him, but rather only refers to "State Police." Compl. at 13. Similarly, Mr. Dec names no other individual who was involved in the pepper spraying incident except for Trooper Berger. Thus, because the State Police are immune from suit under § 1983, there are no other defendants who are liable for that event under any cause of action. As for Trooper Berger, because the only mention of him is with regards to the pepper spraying incident, the First Amendment claim against him is limited to that incident alone, and does not encompass Mr. Dec's arrest and detention.

cause of action under § 1983, let alone demonstrate that such a scenario is a plausible one. As such, his federal claims against Sheriff Slupe cannot survive the *Twiqbal* standard, and must be dismissed with prejudice.

### 2. *Butler County Public Defender Charles Nedz, Butler County Public Defender's Office*

Courts in this Circuit have held that a County Public Defender's Office is not a "person" that can be sued under § 1983. *Simpson v. City of Coatesville*, CIV. A. 10-0100, 2010 WL 3155307, at *24 (E.D. Pa. July 28, 2010) (collecting cases); *Santos v. Smith*, CIV. 08-3846, 2008 WL 4922207, at *3 (D.N.J. Nov. 12, 2008) (citing *Will*, 491 U.S. at 71). Moreover, Mr. Dec's only basis of liability for the Public Defender's Office is based on the actions of Mr. Nedz – he does not allege any wrongs perpetrated by the Office itself. This type of *respondeat superior* liability is not permitted under § 1983. *Tankersley v. Morris*, 2:08-CV-1653, 2009 WL 499264, at *5 (W.D. Pa. Feb. 26, 2009) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1981)). Therefore, the federal claims against the Public Defender's Office and Mr. Nedz are dismissed with prejudice.

Also, for purposes of § 1983, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981), because in that function "counsel will [necessarily] be free of state control, *id.* at 322.. Mr. Dec has alleged that Mr. Nedz "buried" Mr. Dec's report from other prison inmates that the police were "laughing about [Dec] trying to charge [Judge Haggerty.]" Compl. at 14 ¶ 8. He alleges that Mr. Nedz was part of the "conspiracy" against him, Resp. ¶ 8C, that he destroyed a copy of a letter written to him by one of those inmates, *id.* ¶ 6, and that he did not make a legal argument on appeal that Mr. Dec believes he should have, *id.* ¶ 10. Because all of the allegations against Mr. Nedz involve a

public defender performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding, they did not take place under color of state law.

While a public defender may be liable under 42 U.S.C. § 1985(3) for intentional misconduct if he conspires with state officials to deprive his clients of substantial rights, *Tower v. Glover*, 467 U.S. 914, 923 (1984), Mr. Dec offers no facts in support, either directly or by way of inference, of his conclusory allegation that Mr. Nedz "engage[d] in a pattern of conspiracy" with ADA Bosco and Sheriff Slupe. *See Stankowski v. Farley*, 251 F. App'x 743, 747 (3d Cir. 2007) (vague allegation of conspiracy, where only factual basis was a sidebar with counsel during sentencing, insufficient to state claim for conspiracy). Therefore, Mr. Dec has failed to state a claim under federal law against Mr. Nedz, and all such claims are dismissed with prejudice.

### 3. Butler County District Attorney's Office, Butler County Assistant District Attorney Bosco

A County District Attorney's Office is not a legal entity for purposes of § 1983, and therefore cannot be sued. *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997). Additionally, District Attorneys have absolute immunity from suit for prosecutorial duties "intimately associated with the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "The decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992) (internal citations omitted). This immunity also extends to the decision to dispose of a case by plea. *Davis v. Grusemeyer*, 996 F.2d 617, 629-30 (3d Cir. 1993), *overruled on other grounds by Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998).

18

Here, Mr. Dec alleges that ADA Bosco, while knowing that Mr. Dec was innocent of a crime, reduced the charges against him to summary offenses in order to deprive him of a jury trial. Compl. at 14 ¶ 11. Because the decision to charge a defendant is at the core of the prosecutorial function, ADA Bosco enjoyed absolute immunity when he acted regardless of whether he acted in good faith, and all federal claims against him must be dismissed with prejudice.

### 4. Butler County

Mr. Dec also brings suit against Butler County. In doing so, he takes on a daunting task. In order to sue a municipality under § 1983, a plaintiff "must prove that 'action pursuant to official municipal policy' caused [his] injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

> To establish liability based on a municipal policy or custom, the plaintiff must demonstrate the municipality was "the 'moving force' behind the injury alleged" by showing that there was a "direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). A plaintiff must also establish that the municipal decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411, [*Connick,*] 117 S. Ct. 1382. This is a "stringent standard of fault" that "requir[es] proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410, 117 S. Ct. 1382.

*Stanley v. City of Pittsburgh*, 467 F. App'x 132, 133 (3d Cir. 2012); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).

Here, Mr. Dec has not sufficiently alleged either the existence of such a policy, or that it was the proximate cause of any injuries he suffered. But even if he could, the Complaint is absolutely silent as to any policy of constitutional violations on the part of the County, and his

Response only asserts one in the broadest of terms: "multiple actors within the same county system evince[d] a design to obstruct justice for the sake of one of their own," Resp. ¶ 7, Butler County is "a massive living organism of Constitutional violations of Monell Proportions," *id.* ¶ 11. There are no underlying facts with which Mr. Dec can support this claim – as noted above, he has made only threadbare allegations that he was wronged by Sheriff Slupe, ADA Bosco, and Mr. Nedz, who "conspired" against him, and cites only those wrongs as evidence of the County's custom of "deliberate indifference." Because Mr. Dec's alleged federal claim against the County consists entirely of "'bald assertions' regarding a lack of appropriate procedures [that] will not suffice" in a § 1983 suit, it must be dismissed with prejudice. *Barkley v. Westmoreland Cnty. Children's Bureau*, 853 F. Supp. 2d 522, 531 (W.D. Pa. 2012).

## C. State Law Claims[13]

### *1. Commonwealth Defendants*

Plaintiff also lodges certain state law tort claims against Defendants arising out of the same panoply of alleged events.[14] Pennsylvania has a comprehensive tort claims act that provides sovereign immunity for "the Commonwealth and its officials and employees acting within the scope of their duties." 1 Pa. Cons. Stat. Ann. § 2310 (West 2012). This sovereign immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacity. 42 Pa. Cons. Stat. Ann. § 8545 (West 2012); *see Story v. Mechling*, 412

---

[13] The Court's jurisdiction over such claims arises from the grant of supplemental jurisdiction provided by statute, 28 U.S.C. § 1367(a). Because (1) the federal § 1983 claims have substance sufficient to confer subject matter jurisdiction on this Court, (2) the federal and state claims in the Complaint arise from a common nucleus of operative facts, and (3) the federal and state claims in the Complaint are so deeply entangled one with the other that they would ordinarily be expected to be tried in one judicial proceeding, the Court believes, in the exercise of discretion, that it is proper to resolve the state claims also. *See Lyon v. Whisman*, 45 F.3d 758, 759-60 (3d Cir. 1995); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

[14] These claims include: false arrest, false imprisonment, obstruction of justice, intentional infliction of emotional distress, "falsifying records," "police brutality/excessive force," malicious prosecution, gross negligence, and "retaliation." Compl. at 3-4.

F. Supp. 2d 509, 518 (W.D. Pa. 2006), *aff'd,* 214 F. App'x 161 (3rd Cir. 2007); *Maute v. Frank,*

657 A.2d 985, 986 (Pa. Super. Ct. 1995).

> "Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer." Willful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress.

*Mitchell v. Luckenbill,* 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (internal citations omitted).

All of the alleged acts committed by Troopers Jenkins, Mifsob, Driscoll, and Berger (to

the extent that any acts are alleged at all) occurred within the scope of their employment as

police officers. They occurred when the officers were in uniform, in their capacity as state

troopers, and thus even if the officers committed intentional torts while so acting, they are

immune. *See id.* To the extent that Trooper Driscoll's testimony may be considered to have

been offered in a different capacity, he would also enjoy absolute immunity under Pennsylvania

law from liability allegedly flowing from such testimony. *See LLMD of Mich., Inc. v. Jackson-

Cross Co.,* 740 A.2d 186, 189 (Pa. 1999) (citing *Binder v. Triangle Publ'ns, Inc.,* 275 A.2d 53

(Pa. 1971)).

There are nine (9) specifically delineated exceptions to this sovereign immunity. They

are: (1) vehicle liability; (2) medical/professional liability; (3) care, custody, or control of

personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and

other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales; (8)

National Guard activities; and (9) toxoid and vaccines. 42 Pa. Cons. Stat. Ann. §8522(b)(1)-(9)

(West 2012); *Story,* 412 F.Supp.2d at 518. None of these apply here. Therefore, the

Commonwealth Defendants are immune from suit from Plaintiff's state law tort claims, and all such claims are dismissed with prejudice.[15]

Furthermore, the claims against Trooper Jenkins must also be dismissed because they lie outside Pennsylvania's two year statute of limitations, 42 Pa. Cons. Stat. Ann. § 5524, as must the claims against Trooper Mifsob because he is not mentioned in Plaintiff's filings.

### 2. County Defendants

The County Defendants in their Motion to Dismiss did not address Plaintiff's state law claims. Even so, all are either immune from suit, or Plaintiff has failed to state a claim against any of them for which relief can be granted. The County and the County District Attorney's Office, as municipal agencies, are completely immune from liability for state tort claims under Pennsylvania's Political Subdivisions Tort Claims Act ("PSTCA"). 42 Pa. Cons. Stat. Ann. § 8541 (West 2012); *see Schneyder v. Smith*, CIV.A. 06-4986, 2007 WL 119955, at *6 (E.D. Pa. Jan. 9, 2007), *rev'd on other grounds sub nom. Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008). Nor do the actions here fall within any of the eight enumerated exceptions in 42 Pa. Cons. Stat. Ann. § 8542(b) (West 2012),[16] which mirror those of § 8552.

ADA Bosco is entitled to immunity for his actions because an assistant district attorney is a "high public official" with absolute immunity from suit under Pennsylvania common law. *See Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001) (prosecutorial immunity for even malicious

---

[15] The Court's inquiry would be different if the Officers were employees of the County, and not the Commonwealth. *Cf. Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009). While County employees enjoy qualified state law immunity that does not extend to intentional torts taken that involve "actual malice or willful misconduct," *see* 42 Pa. Cons. Stat. Ann. § 8550 (West 2012), Commonwealth employees' immunity for intentional actions taken in the scope of their employment is absolute, except for the limited categories noted above. *See Mitchell*, 680 F. Supp. 2d at 682.

[16] These exceptions are: (1) vehicle liability; (2) the care, custody and control of personal property; (3) the care, custody and control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody and control of animals. 42 Pa. Cons. Stat. Ann. § 8542(b).

actions of ADA as long as they are "taken in the course of the official's duties or powers and within the scope of his authority");[17] *Gregg v. Pettit*, CIV A 07-1544, 2009 WL 57118, at *7 (W.D. Pa. Jan. 8, 2009) (applying *Durham* in dismissing state law claims alleged alongside § 1983 claims against ADAs).

As noted above, the only allegations against Mr. Nedz are that he "buried" a story related to him by Plaintiff that the police were laughing about Plaintiff, including by "destroying" a letter, and that he "conspired" with the ADA against Plaintiff. Compl. at 14 ¶ 8; Resp. ¶ 6C. As with Plaintiff's federal claims, such vague and conclusory statements do not meet the *Twiqbal* pleading standard. Similarly, as for Sheriff Slupe, the only allegations against him are that he was "privy to" an alleged cover-up, and for the same reason that Plaintiff's conclusory allegations fail to make out a claim for relief under federal law, they fail to make out a claim for the violation of any state tort under the *Twiqbal* standard.[18] In other words, there is simply not a single state law tort allegedly committed by Sheriff Slupe or Mr. Nedz that can be fashioned into a plausible claim for relief based on Plaintiff's laundry list of perceived wrongs. As such, all state law claims against ADA Bosco, Mr. Nedz, and Sheriff Slupe are also dismissed with prejudice.

## IV. CONCLUSION

Many of the claims and arguments presented by Mr. Dec appear to be fantastical.[19] Still, he has properly alleged a specific event, being pepper sprayed by the police while being chained

---

[17] This absolute immunity existed before the enactment of the PSTCA, and was not abrogated by it. *See Durham*, 772 A.2d at 165.

[18] By dismissing the claims against Sheriff Slupe under the *Twiqbal* standard and not under "high public official" immunity, the Court makes no suggestion as to whether under Pennsylvania law, a county sheriff is a "high public official."

[19] *See, e.g.*, Resp. ¶ 9 ("the uneducated ignoramuses that work for county and state had falsely charged and imprisoned Plaintiff); ¶ 11 ("To keep counties from becoming 'massive living organisms of Constitutional

23

to a bench, without necessity or adequate legal justification, for which Trooper Berger might be liable under 42 U.S.C. § 1983.

For the reasons stated above, all claims against Defendants Trooper Jenkins, Trooper Mifsob, Trooper Driscoll, Pennsylvania State Police Troop D, Butler County Sheriff Mike Slupe, Butler County ADA Bosco, Butler County District Attorney's Office, Butler County Public Defender Charles Nedz, Butler County Public Defender's Office, and Butler County are dismissed with prejudice. All claims against Trooper Berger are dismissed with prejudice except for Plaintiff's (a) 42 U.S.C. § 1983 Fourth Amendment excessive force claim, (b) § 1983 First Amendment retaliation claim, and (c) § 1983 Fourteenth Amendment due process claim, all arising out of the alleged pepper spraying incident. An appropriate order will follow.

Mark R. Hornak
United States District Judge

Dated: December 7, 2012

cc:    All counsel of record
       Mr. Matthew P. Dec, *pro se*

---

corruption' via conspiratorial parties such as the KKK, the Free Mason, or the localized Good ol' Boys mafia cliques as exemplified by the true story of Buford Pusser which was turned into a motion picture entitled Walking Tall, Congress enacted what is known as 'under color of law' crimes codes"); ¶ 13 ("Indeed, if a country run by 'KKK' or 'Masons' that hate the family unit protected by the Fourteenth Amendment's familial intimate association is not subject to Constitutional protection under 'civil Monell' nor 'criminal under color of law'; then both remedies are but snake oil."); *see also Dec v. Double*, 2010 WL 2471678, at \*3. Given the nature of these and other allegations in the Complaint, and Mr. Dec's willingness to already have raised new matters in his Response brief (which this Court has considered), the Court finds and concludes that there is no basis to allow Mr. Dec to amend his dismissed claims, and that any effort to do so would be fruitless. *See Credico v. CEO Idaho Nat'l Lab.*, 461 F. App'x 78, 79 (3d Cir. 2012) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)).

24